E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office
COURTNEY N. WILLIAMS (Cal. Bar No. 339301)
Assistant United States Attorney
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 368-1473
    Facsimile: (213) 276-6202
    Email:     Courtney.N.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 21-00067-FLA |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT SAMUEL MARTINEZ, III'S POSTIION REGARDING SENTENCING (DKT. 42); DECLARATION OF COURTNEY WILLIAMS |
| v. | |
| SAMUEL MARTINEZ, III, | Hearing Date: January 13, 2023 Hearing Time: 11:00 a.m. Location:    Ctrm. of the Hon. Fernando L. Aenlle-Rocha |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Courtney N. Williams,
hereby files its Response to Defendant Samuel Martinez, III's
Position Regarding Sentencing (Dkt. 42).

    This response is based on the attached memorandum of points and
authorities and accompanying Declaration of Courtney Williams; the
files and records in this case, including the United States Probation

1

and Pretrial Services Office's Recommendation Letter and Presentence Investigation Report; and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government respectfully requests the opportunity to further supplement its position or respond to defendant as may become necessary.

Dated: November 18, 2022          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office


_____/s/_____
COURTNEY N. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   ARGUMENT.......................................................3

      A.   Information in the PSR is Regularly Relied on For
           Calculating the Appropriate Guidelines Range, But, in
           Any Event, Defendant's Certified Convictions Provide
           Sufficient Additional Evidence to Satisfy § 4B1.1's
           Requirements..............................................3

      B.   California Health and Safety Code § 11378 is a
           Predicate "Controlled Substance Offense" for § 4B1.1......5

           1.   Defendant's state drug trafficking convictions
                under § 11378 qualify as controlled substance
                offenses.............................................5

           2.   Defendant establishes no categorical overbreadth.....7

           3.   Defendant's claim also fails under the modified
                categorical approach................................12

      C.   The Appropriate Sentence is a 188-Month Sentence,
           which is Within the Properly Calculated Guidelines
           Range After Application of Career Offender
           Enhancements Under §4B1.1................................14

III.  CONCLUSION....................................................17

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**Federal Cases**                                                       **Page(s)**

Descamps v. United States,
  570 U.S. 254 (2013) ......................................... 13

Gonzales v. Duenas-Alvarez,
  549 U.S. 183 (2007) ....................................... 9,11

Marinelarena v. Garland,
  6 F. 4th 975 (9th Cir. 2021) ................................ 12

Padilla-Martinez v. Holder,
  770 F. 3d 825 (9th Cir. 2014) ............................... 12

Sierra Forest Legacy v. Sherman,
  646 F.3d 1161 (9th Cir. 2011) ................................ 7

Silva v. Garland,
  993 F.3d 705 (9th Cir. 2021) ................................. 7

United States v. Booker,
  543 U.S. 220 (2005) ......................................... 14

United States v. Cantrell,
  433 F.3d 1279 (9th Cir. 2006) ............................... 14

United States v. Ceja,
  23 F.4th 1218 (9th Cir. 2022) ........................... passim

United States v. Gonzalez-Aparicio,
  822 F.3d 1031 (9th Cir. 2011) ............................... 13

United States v. Martinez-Lopez,
  864 F.3d 1034 (9th Cir. 2017) ............................ 12,13

United States v. Mitchell,
  238 F. App'x 243 (9th Cir. 2007) ............................. 3

United States v. Ramos-Medina,
  706 F.3d 932 (9th Cir. 201)3 ............................... 2,7

United States v. Romero-Rendon,
  220 F.3d 1159 (9th Cir. 2000) ................................ 4

ii

United States v. Rodriguez-Gamboa,
   972 F.3d 1148 (9th Cir. 2020) ............................. passim
United States v. Vega-Ortiz,
   822 F.3d 1031 (9th Cir. 2016) ......................... 11,12,13

**Federal Statutes**
21 U.S.C. § 802 ............................................. 8
21 U.S.C. § 813 ............................................. 8

**State Cases**
People v. Becker,
   107 Cal. Rptr. 3d 856 (Ct. App. 2010) ........................ 12
People v. Becker,
   183 Cal. App. 4th 1151 (2010) ............................... 10
People v. Martin,
   25 P.3d 1081 (Cal. 2001) ..................................... 9
People v. Polk,
   248 Cal. Rptr. 3d 335 (Ct. App. 2019) ........................ 9
People v. Silver,
   281 Cal. Rptr. 354 (Ct. App. 1991) ......................... 8,9

**State Statutes**
California Health and Safety Code § 11378 ................... passim
California Health and Safety Code § 11401 ................... 5, 11

**United States Sentencing Guidelines**
U.S.S.G. § 4B1.1 ........................................... passim
U.S.S.G. § 4B1.2 ...................................... 1, 3, 4, 16

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        The essence of defendant Samuel Martinez, III's sentencing

4   position is that he wants to avoid the Guidelines range that comes

5   with being a career offender.  (Dkt. 42 ("Def. Sent. Pos.").)

6   Unfortunately for defendant, the law, facts, evidence, and § 3553(a)

7   factors are not on his side.  He faces a properly calculated

8   Guidelines range of 188-235 months because of his own actions--his

9   recidivism triggers the application of § 4B1.1.  This response

10  concerns three broad challenges raised by defendant.[1]  First,

11  defendant essentially raises an evidentiary argument that there is

12  insufficient proof of his August 2009, August 2011, and June 2016

13  convictions under California Health and Safety Code § 11378 and July

14  2015 conviction under California Health and Safety Code § 11352(a)

15  for the Court to apply § 4B1.1.  Second, he pivots and challenges

16  whether California Health and Code § 11378 is a predicate prior

17  "controlled substance offense" under § 4B1.1.  (*Id.* at 3.)  Third, he

18  argues that the career offender Guidelines are "unduly harsh" and

19  otherwise makes § 3553(a) arguments.  (*Id.* at 7-15.)

20       His challenges are easily overcome, ignore applicable Ninth

21  Circuit authority, and point the Court's focus in the wrong

22  direction.  First, it is well-established that the Court can rely on

23  uncontroverted information in the PSR to apply § 4B1.1, but, in any

24

25

26

-----

27       [1] The government will not address every point raised by
    defendant in his sentencing memorandum, however, government counsel
28  will be prepared to address all aspects of the case at the sentencing
    hearing.

1  event, defendant's certified convictions[2], which contains records of
2  defendant's August 2009, August 2011, and June 2016 § 11378
3  convictions and July 2015 § 11352(a) conviction, remove any doubt
4  that defendant has at least two predicate "controlled substance
5  offenses" before the instant offense.  Second, the Ninth Circuit has
6  squarely held that California Health and Safety Code § 11378
7  convictions are controlled substance offenses.  *See United States v.*
8  *Ceja*, 23 F.4th 1218, 1226 (9th Cir. 2022).  Moreover, the Ninth
9  Circuit has rejected, "as a matter of law," defendant's challenge
10 that the California definition of methamphetamine is broader than the
11 federal definition.  *See United States v. Rodriguez-Gamboa*, 972 F.3d
12 1148, 1154 n.5 (9th Cir. 2020).  These decisions are binding whether
13 or not defendant raises "new" arguments regarding California's
14 definition of methamphetamine.  *See United States v. Ramos-Medina*,
15 706 F.3d 932, 939 (9th Cir. 2013).  Finally, the properly calculated
16 Guidelines range of 188-235 months that defendant faces is not simply
17 based on the conduct in this case -- it rightly incorporates
18 defendant's 20-year criminal history committing serious drug offenses
19 within the community.  Defendant is a recidivist whose prior lengthy
20 sentences have failed to deter him from committing more crimes.  His
21 Guidelines range reflects Congress's determination that recidivist
22 drug traffickers should face more serious sentences.  As more fully
23 discussed in the government's initial sentencing position (Dkt. 40),
24 the appropriate Guidelines calculations and balancing of the
25 § 3553(a) factors support a low-end, Guidelines sentence of 188

26
27        [2] The undersigned Assistant United States Attorney has requested
   the defendant's certified convictions.  However, I have not received
28 them.  I will lodge the certified convictions with the Court once I
   receive them.

2

1    months' imprisonment.

2    **II.  ARGUMENT**

3         **A.    Information in the PSR is Regularly Relied on For
              Calculating the Appropriate Guidelines Range, But, in Any
4              Event, Defendant's Certified Convictions Provide Sufficient
              Additional Evidence to Satisfy § 4B1.1's Requirements**

5

6         The PSR provides clear and convincing evidence that defendant is

7    a career offender.  As an initial matter, defendant argues that the

8    United States has failed to provide the Court sufficient evidence his

9    prior controlled substance convictions can be used as predicate

10   offenses for the career offender enhancement.  However, setting aside

11   whether two prior felony convictions for controlled substance

12   offenses under § 4B1.1 must be shown by the clear and convincing

13   standard, *see United States v. Mitchell*, 238 F. App'x 243, 244 (9th

14   Cir. 2007) (assuming but not deciding that the clear and convincing

15   standard applies for proving predicate offenses under § 4B1.1), such

16   a standard is met here.  It is well-established that uncontroverted

17   information in the PSR is appropriately relied on by a Court to make

18   sentencing calculations.

19        Federal Rule of Criminal Procedure 32 provides that a sentencing

20   court "may accept any undisputed portion of the presentence report as

21   a finding of fact."  Fed. R. Crim. P. 32(i)(3)(A).[3]  The Ninth

22   Circuit has held that an "uncontroverted PSR indicating the previous

23   statute of conviction and bearing previously endorsed indicia of

24   reliability, [even when the PSR is] the only evidence before [the]

25   district court, [is] clear and convincing evidence of the factual

26

27   ───────────────────

28        [3] Notably, defendant does not dispute the accuracy of the PSR,
     but rather simply wants more information.  (Def. Sent. Pos. at 3.)

basis for [an] enhancement." *United States v. Romero-Rendon*, 220 F.3d 1159, 1165 (9th Cir. 2000).

Here, the PSR contains undisputed facts of defendant's prior convictions, including, the specific state criminal statutes charged, the dates of conviction, and the penalties imposed. (PSR ¶¶ 40, 43, 44, 45.) Generally, for its Criminal History Calculation, the PSR includes a detailed list of the documents and resources with endorsed indicia of reliability relied on to produce the PSR, including arrest records and court records. (*Id.* ¶ 35.) Specifically, the Probation Office reviewed records from the Riverside County Superior Court, the San Bernardino County Superior Court, the California Department of Corrections and Rehabilitation, the San Bernardino County Sheriff's Department, and the Colton Police Department, as well as Post Release Community Supervision records. (*Id.*) Specifically, as to the August 2009 § 11378 conviction, the PSR relies on the "Abstract of Judgment," "Felony Complaint," Colton Police Department arrest report, and California Department of Corrections records. (*Id.* ¶ 40.) Defendant raises no challenge to the accuracy or reliability of such credible sources and documents explicitly considered by the Probation Officer (*see* Def. Sent. Pos. at 3.), and he has no reasonable basis to do so. The same is true for the "Complaint," "Change of Plea form," California Department of Corrections records, and Post-Release Community Supervision records supporting the August 2011 § 11378 conviction. (PSR ¶ 43.) The Probation Officer relied on the "Felony Complaint," California Department of Corrections records, and Post-Release Community Supervision records for the June 2016 § 11378 conviction. (PSR ¶ 45.) Finally, the "Felony Complaint" was relied on for the July 2015 § 11352(a) conviction.

4

1   There is sufficient evidence for the Court to conclude that
2   defendant's August 2009, August 2011, and June 2016 § 11378
3   convictions and July 2015 § 11352(a) conviction are predicate
4   controlled substance offenses for § 4B1.1.  Regardless, out of an
5   abundance of caution, the government will provide defendant's
6   certified conviction records for the predicate convictions described
7   in paragraphs 40, 43, 44, and 45 of the PSR.  Defendant has at least
8   two predicate convictions that trigger application of § 4B1.1

9       **B.   California Health and Safety Code § 11378 is a Predicate
     "Controlled Substance Offense" for § 4B1.1**

10

11           1.   <u>Defendant's state drug trafficking convictions under
        § 11378 qualify as controlled substance offenses</u>

12

13       Defendant's sentencing memorandum pivots from evidentiary
14   arguments to legal ones--whether his August 2009, August 2011, and
15   June 2016 § 11378 convictions are "controlled substance offenses"
16   under U.S.S.G. § 4B1.2(b).[4]  (Def. Sent. Pos. at 3-6.)  In
17   defendant's view (contrary to Ninth Circuit decisions), § 11378 is
18   overbroad allegedly because the statute criminalizes possession for
19   sale of controlled substance analogs, and the California definition
20   of an analog is broader than the federal definition.  (*Id.* at 4.)
21   That is, defendant asserts that § 11378 criminalizes possession for
22   sale of more kinds of methamphetamine than federal law.  This
23   contention fails for multiple reasons.

24

25

26

----

27       [4] Defendant does not challenge the determination that a
     § 11352(a) conviction is a predicate controlled substance offense
28   under § 4B1.1.  Consequently, only one additional conviction is
     needed for § 4B1.1 to apply here.

*a.  The Ninth Circuit has previously rejected
defendant's argument*

To begin, the resolution of defendant's challenge is controlled by binding precedent.  *United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. 2020), held "*as a matter of law*, that California's definition of methamphetamine is a categorical match to the definition under the federal CSA."  *Id.* at 1154 n.5 (emphasis added). The applicable corollary is found in *United States v. Ceja*, where the Ninth Circuit held that a district court "correctly applied the career offender guideline" because that defendant's "two prior convictions under California Health and Safety Code § 11378 are controlled substance offenses." 23 F.4th at 1226.  In reaching that conclusion, the Ninth Circuit rejected the argument (now made by defendant) that Ceja's "prior state convictions are not controlled substance offenses because the California methamphetamine provisions sweep more broadly than the federal provisions." *Id.; see* Def. Sent. Pos. at 4-6.

*Rodriguez-Gamboa* and *Ceja* begin and end the analysis.  *Ceja* squarely held that California Health and Safety Code § 11378 is a controlled substance offense--which is the precise issue presented here--while *Rodriguez-Gamboa* rejected defendant's claim that the California definition of methamphetamine is overbroad.  Defendant cannot escape the force of these controlling precedents.  The questions *Rodriguez-Gamboa* and *Ceja* resolved are the same questions defendant seeks to relitigate: whether the California definition of methamphetamine is broader than the federal definition.  The Ninth Circuit has already supplied the answer: no.  *See Ceja*, 23 F.4th at

6

1226; *Rodriguez-Gamboa*, 972 F.3d at 1154-55 & n.5.  The question was
unambiguously raised and decidedly resolved.

Importantly, defendant cannot relitigate those questions by
proffering "a different argument using analogs." (*Cf.* Def. Sent. Pos.
at 4.)  This Court is "bound by prior circuit law even when a new
litigant raises arguments that are 'characterized differently or more
persuasively.'" *Silva v. Garland*, 993 F.3d 705, 717 n.7 (9th Cir.
2021) (quoting *United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th
Cir. 2013)). "This rule makes sense because we cannot continually re-
litigate issues that [the Ninth Circuit] has already decided simply
because a party puts forth a new argument about why [courts] should
rule differently." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161,
1189 (9th Cir. 2011).

Moreover, this rule applies specifically in the context of the
categorical approach.  In *Ramos-Medina*, the defendant similarly
argued that the Ninth Circuit could disregard prior decisions holding
that a state offense was a "crime of violence" because "he presents a
different argument than did the petitioners in those cases."  706
F.3d at 938.  But the Ninth Circuit rejected Ramos-Medina's
invitation to depart from *stare decisis* and explained that it was
"not free to disregard the decision of another panel of our court
simply because we think the arguments have been characterized
differently or more persuasively by a new litigant."  *Id.* at 939.
The same principle applies here.

2.  <u>Defendant establishes no categorical overbreadth</u>

In any event, even if precedent did not already foreclose his
overbreadth claim, defendant has not established that the California
definition of a controlled substance analog is actually broader than

the federal definition.  According to defendant (Def. Sent. Pos. at 5), there are two distinctions between the federal and state definitions: (1) the federal definition includes only substances that are "intended for human consumption," while the California definition contains no such limitation; and (2) the federal definition includes substances that both have (i) a chemical structure substantially similar to the structure of a controlled substance *and* (ii) a substantially similar effect on the central nervous system, while the California definition only requires that one of these conditions be satisfied.  *Compare* 21 U.S.C. § 802(32), *and* 21 U.S.C. § 813, *with* Cal. Health and Safety Code § 11401.

These purported distinctions are not plain or obvious, because in fact, they are illusory.  *See People v. Silver*, 281 Cal. Rptr. 354, 357 (Ct. App. 1991) (explaining that § 11401 "employs the same terms" and "copied the language of the federal act which preceded it").  Although defendant contends that California's definition of an analog is "missing" an "intended-for-human consumption" requirement (Def. Sent. Pos. at 5), under California Health and Safety Code § 11401(c)(3), a controlled substance analog does not include "[a] substance, before an exemption as specified in paragraph (2) takes effect with respect to the substance, to the extent the substance is not intended for human consumption."  Defendant appears to assume that this provision applies only to substances that are eventually covered by § 11401(c)(2)--which exempts substances used for certain investigational purposes from California's definition of an analog. However, it is at least plausible that this provision applies more broadly, and the reference to § 11401(c)(2) merely clarifies the boundaries of the two exemptions.

8

That is particularly true because it would not make sense for California to prosecute a distributor of illegal drugs for possessing a substance he never intended another person to consume. *See Silver*, 281 Cal. Rptr. at 357 (explaining that "the statute will be construed to avoid absurd consequences"). Indeed, the California Supreme Court has instructed that "[t]he essential elements of unlawful possession of a controlled substance are dominion and control of the substance in a quantity *usable for consumption or sale*." *People v. Martin*, 25 P.3d 1081, 1083 (Cal. 2001) (quotation marks omitted) (emphasis added). And "a usable quantity of a controlled substance is shown if it was of a quantity which could be potentiated by consumption in any of the manners customarily employed by users." *People v. Polk*, 248 Cal. Rptr. 3d 335, 343 (Ct. App. 2019) (cleaned up). Given these background principles, it is not plain that an individual could be convicted of any California drug crime based on the possession for sale of a substance that was not "intended for human consumption."

Defendant also cannot show that the California definition is plainly overbroad because it has two "disjunctive" requirements, as opposed to the purportedly conjunctive federal definition. (*See* Def. Sent. Pos. at 5.) At least one Circuit has actually held that the federal definition is also disjunctive, which alone forecloses a finding of plain error*. See United States v. Granberry, 916 F.2d 1008, 1010 (5th Cir. 1990).* Moreover, defendant has failed to show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the federal definition. *Rodriguez-Gamboa*, 972 F.3d at 1153 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). He asserts that "California actually prosecutes people for methamphetamine

9

analogs, and that it does so without having to prove both
substantially similar chemical structure."  (Def. Sent. Pos. at 6.)
He then goes on to cite *People v. Becker*, 183 Cal. App. 4th 1151
(2010) to support this proposition and states in *Becker*, an expert
testified that because Ecstasy "has a stimulant effect substantially
similar to the stimulant effect of methamphetamine," the state court
found that it qualified as an analog of methamphetamine.  (*Id.*)
However, this is not true.  The expert in Becker testified that
"Ecstasy or MMDA *includes* methamphetamine and, as such, has a
stimulant effect substantially similar to the stimulant effect of
methamphetamine.  183 Cal. App. 4th at 1156 (emphasis added).  In
relevant part, the investigator said: "It's methyldioxy
methamphetamine, that is what MDMA is.  So from the methamphetamine,
logically it's a stimulant, so you would get a dramatically raised
heart rate, your heartbeat would go to 120, 130 beats per minute.
You would be infused with adrenaline, norepinephrine . . . your
pupils would dilate and become very large.  You would be very excited
. . . ."  *Id.* (emphasis added).  Basically, because Ecstasy includes
methamphetamine "there was no need to allege that Ecstasy was an
analog of a controlled substance as opposed to a controlled
substance, for purposes of section 11378 and 11377."  *Id.* (citations
omitted).

In essence, defendant has not identified any actual substances--
or an actual case on point where someone was prosecuted in California
for a substance that is not prohibited under federal law.  As a
result, defendant has failed to show a "realistic probability" that
California's analog statute might be used to prosecute someone who

1  would not face criminal liability under federal law.  See *Rodriguez-*
2  *Gamboa*, 972 F.3d at 1153.

3      Defendant's claim rests on molecular chemistry coupled with his
4  preferred reading of California law in a manner that would
5  criminalize the possession and sale of drugs that drug users cannot
6  use.  As the Ninth Circuit concluded in *United States v. Vega-Ortiz*,
7  822 F.3d 1031 (9th Cir. 2016), such theoretical overbreadth--even
8  with a textual anchor--does not satisfy *Duenas-Alvarez*.  In *Vega-*
9  *Ortiz*, the Ninth Circuit faced a superficially straightforward,
10  textual overbreadth: while federal law excludes certain "product[s]
11  containing L-meth from the definition of methamphetamine,"
12  California's definition of methamphetamine does not.  *Id.* at 1035-36.
13  Nevertheless, this was not sufficient under *Duenas-Alvarez*.  *Id.*  The
14  California statute was not "overbroad on its face," because it did
15  not "expressly include conduct not covered by the generic offense."
16  *Id.* at 1036 (quotation marks omitted).  Thus, the defendant was
17  required to provide other evidence of "a 'realistic probability' that
18  he would be prosecuted under § 11378 for possession of the excluded
19  product containing L-meth."  *Id.*  He failed to do so.  Accordingly,
20  the Ninth Circuit affirmed that his conviction for trafficking
21  methamphetamine (under California Health and Safety Code § 11378) was
22  an aggravated felony.  *Id.*

23      That reasoning applies here.  At best, defendant asserts a
24  theoretical overbreadth, and he did not satisfy his burden to
25  establish a "realistic probability, not a theoretical possibility,
26  that the State would apply its statute to conduct that falls outside
27  the generic definition."  *Duenas-Alvarez*, 549 U.S. at 193.

28

11

1    Accordingly, defendant has failed to establish that California's

2    definition of a controlled substance analog is actually overbroad.

3         3.   Defendant's claim also fails under the modified
              categorical approach

4

5         Defendant's claim also fails because § 11378 is divisible as to

6    analogs.  The Ninth Circuit has held that § 11378 is divisible as to

7    regular controlled substances because "California state law treats

8    the type of controlled substance as a separate element in prosecuting

9    relevant drug offenses."  *Padilla-Martinez v. Holder*, 770 F.3d 825,

10   831 n.3 (9th Cir. 2014).  It is particularly significant that the

11   California instruction "for conviction under § 11378 requires the

12   jury to fill in the blank where the controlled substance is to be

13   identified." *Id.; see also Vega-Ortiz*, 822 F.3d at 1035.  This

14   requirement ensures that the jury will "unanimously agree" that "a

15   particular controlled substance" is the basis of the defendant's

16   conviction.  *United States v. Martinez-Lopez*, 864 F.3d 1034, 1041

17   (9th Cir. 2017) (en banc) (interpreting similar California drug

18   statute).

19        The same features of § 11378 demonstrate that it is also

20   divisible as to analogs.  If the substance at issue in a California

21   drug prosecution is a controlled substance analog, "the judge must

22   require the jury to name the specific type of controlled substance

23   and to find whether it is an analog of a listed controlled

24   substance." *Marinelarena v. Garland*, 6 F.4th 975, 977 (9th Cir.

25   2021) (interpreting similar California drug statute); *see* CALCRIM No.

26   2302 (same instruction for § 11378).  In other words, the jury must

27   unanimously agree that a particular analog is the basis of the

28   defendant's conviction.  And at the beginning of such a prosecution,

12

the charging document must also identify the particular analog that the defendant is accused of possessing for sale. *See People v. Becker*, 107 Cal. Rptr. 3d 856, 860-61 (Ct. App. 2010).

These requirements demonstrate that possession of an analog for sale and possession of methamphetamine for sale are "separate crimes." *Martinez-Lopez*, 864 F.3d at 1040. They also eliminate any risk that a defendant might receive an enhancement based on the possession of methamphetamine for sale, when he actually possessed some other substance. *See Descamps v. United States*, 570 U.S. 254, 272 (2013) (explaining purpose of categorical approach). "A later sentencing court need only check the charging documents and instructions" to see what substance was the basis of his conviction. *Id*.

As a result, the modified categorical approach can be applied in this case. Defendant has never disputed that he was convicted of possession of methamphetamine for sale, as opposed to some other substance. That concession is also consistent with the undisputed information in the PSR. (PSR ¶¶ 40, 43, 45.) *See United States v. Gonzalez-Aparicio*, 663 F.3d 419, 432-33 (9th Cir. 2011) (holding that it was not plain error to consult Presentence Report as part of modified categorical approach). Therefore, defendant's three convictions for violating § 11378 qualify as controlled substance offenses for § 4B1.1. *See Ceja*, 23 F.4th at 1226. The enhancements under § 4B1.1 apply in this case and should be the basis of the Court's determination of the applicable Guidelines range. (PSR ¶¶ 28-33, 40, 43, 44, 45, 94.)

**C.  The Appropriate Sentence is a 188-Month Sentence, which is Within the Properly Calculated Guidelines Range After Application of Career Offender Enhancements Under §4B1.1**

While properly calculated Guidelines ranges are not binding after *United States v. Booker,* 543 U.S. 220 (2005), district courts must continue to "'consult [the] Guidelines and take them into account when sentencing,' even though they now have the discretion to impose non-Guidelines sentences." *United States v. Cantrell,* 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *Booker,* 543 U.S. at 263) (alteration in original).  Despite defendant's claims that the Guidelines, including the career offender enhancement, are "unduly harsh," they properly account for the seriousness of the offense as part of the arc of defendant's lengthy, aggravating criminal history.

The Guidelines range in this case is properly calculated with a Total Offense Level of 31 and Criminal History Category VI, with a resulting range of 188-235 months.  Sentencing within that range, at the low end, is the appropriate balance of the nature, circumstances, and seriousness of the offense, the need for deterrence, promoting respect for the law, and defendant's lengthy criminal history and likelihood of recidivism, among other things.

Defendant has been given multiple opportunities to turn his life around, yet he has continued to reoffend.  For instance, in 2004, defendant was sentenced to 16 months' imprisonment for possessing a controlled substance.  (PSR ¶ 38.)  He was paroled on April 30, 2004, and then returned to custody two months later.  (*Id.*)

Then in 2006, he was sentenced to five years' and eight months' imprisonment for taking a vehicle without the owner's consent, evading a peace officer, obstructing an officer, and gang participation.  (PSR ¶ 39.)  He was paroled on August 28, 2007, and

14

1   then returned to custody on January 2, 2008.  (*Id.*)

2       Then in 2009, defendant was convicted of a drug trafficking

3   offense.  (PSR ¶ 40.)  He was sentenced to 16 months' imprisonment.

4   (*Id.*)  He was paroled on May 25, 2010, and then returned to custody

5   on November 10, 2010.  (*Id.*)

6       In 2011, defendant was convicted of a second drug trafficking

7   offense and sentenced to four years' imprisonment. (PSR ¶ 43.)  On

8   June 10, 2014, he was discharged to Riverside Post Release Community

9   Supervision ("PRCS").  (*Id.*)  He violated the terms of PRCS multiple

10  times: August 2, 2014, October 15, 2014, and January 2, 2015.  (*Id.*)

11      Then in 2015, he was convicted of another drug trafficking

12  offense--transporting, selling a narcotic controlled substance, and

13  sentenced to one year and four months in jail and eight months'

14  mandatory supervision.  (PSR ¶ 44.)  He violated his mandatory

15  supervision multiple times: October 16, 2015, and January 2, 2018.

16  (*Id.*)  On January 3, 2018, he was sentenced to an additional 120 days

17  for his violation and on March 25, 2019, he was sentenced to an

18  additional 365 days.  (*Id.*)

19      Then in 2016, he was given a lengthier prison sentence of 40

20  months for his fourth drug trafficking conviction.  (PSR ¶ 45.)  In

21  that case he was placed on PRCS and violated the terms multiple

22  times: March 21, 2019, and January 30, 2020.  (*Id.*)  Then in 2022,

23  defendant was convicted of his fifth drug trafficking offense and

24  sentenced to 120 days of jail and two years' probation. (PSR ¶ 46.)

25      Defendant's criminal history shows that he has been given

26  numerous opportunities to choose a law-abiding life, including

27  following lenient prior sentences, yet he fails to take advantage of

28  these opportunities and continues to reoffend.  In fact, when

                                15

defendant committed the instant offense, he was on parole for a possession of a controlled substance for sale conviction.  (PSR ¶¶ 48-51.)   Further, when local law enforcement tried to arrest defendant for his felony warrant in the case, he refused to turn himself in.  (PSR ¶¶ 9-11.)  Defendant's criminal history is egregious and lengthy.  Only 13 criminal history points are required for the maximum Criminal History Category of VI, yet defendant has 23 points.  (*Id.* ¶ 50.)  All his sentences, revocations, and periods of supervision have not been able to cabin defendant's recidivism.

Without providing a complete picture of defendant's aggravating criminal history, in particular concerning five prior drug trafficking offenses, he argues that the Guidelines here overstate the seriousness of the offense, focusing on the fact that the conviction in this case is based on his possessing with intent to distribute 9.9 grams of actual methamphetamine.  But this argument is meritless.  Defendant was charged here with possessing 9.9 grams of methamphetamine with intent to distribute after *five* prior drug trafficking convictions.  The Court's focus should not be on the amount of methamphetamine, which would be the case if § 2D1.1 applied, but on the fact that defendant's recidivist drug trafficking actions trigger a different section of the Guidelines altogether.  Despite multiple prior convictions, each with generally increasingly severe sentences, defendant has demonstrated a willingness to engage in criminal conduct and shown he will not be deterred from further criminal action.  The Guidelines § 4B1.1 is specifically intended to address a person in defendant's shoes.

It is a distraction that defendant argues that there are "any number of serious violent felonies that would yield a lower guideline

range based on a criminal history category VI." (Def. Sent. Pos. at 7-8.) The Court should find this argument unconvincing. Defendant's Guidelines are based on defendant's 20-year criminal history, in particular concerning drug trafficking offenses. He is a career criminal in both the legal and the lay sense of the phrase. Indeed, it appears the longest periods of time without criminal conduct is when he's incarcerated. Defendant has failed several times to complete a term of parole or supervision without violations, resulting in his return to custody. Given these aggravating factors, a sentence above 188 months could be justified, although the United States seeks only a 188-month, low-end sentence. Overall, a substantial increase in a custodial sentence through the career offender Guidelines is "sufficient, but not greater than necessary to comply with the purposes" of sentencing.

**III. CONCLUSION**

For the foregoing reasons, the Court should properly calculate the Guidelines range by applying § 4B1.1 and then impose a low-end, Guidelines sentence of 188 months' imprisonment followed by five-years of supervised release and a $100 mandatory special assessment.