CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
LUISA TAMEZ (Bar No. 5434469)[1]
(E-Mail: Luisa_Tamez@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California  92501
Telephone:  (951) 276-6346
Facsimile:  (951) 276-6368

Attorneys for Defendant
SAMUEL MARTINEZ, III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>SAMUEL MARTINEZ, III<br><br>          Defendant. | Case No. ED CR 21-00067-FLA<br><br>**REPLY IN SUPPORT OF SAMUEL MARTINEZ, III'S POSITION REGARDING SENTENCING**<br><br>Sentencing Date: January 13, 2023 |

Defendant, Samuel Martinez, III, by and through his counsel of record, Deputy Federal Public Defender Luisa Tamez, hereby submits his reply to the government's response to his position regarding sentencing.

                                            Respectfully submitted,

                                            CUAUHTEMOC ORTEGA
                                            Federal Public Defender

DATED: December 7, 2022      By  */s/ LUISA TAMEZ*
                                                  LUISA TAMEZ
                                                  Deputy Federal Public Defender

---

[1] Luisa Tamez is a government attorney and a member of the New York State Bar. Ms. Tamez has been admitted to practice before the United States District Court for the Central District of California.

# I. INTRODUCTION

On October 27, 2022, Mr. Martinez filed his sentencing position, objecting to the United States Probation Office's determination that he is a career offender. Mr. Martinez maintains that the just sentence in this matter is a sentence at the mandatory minimum of five years. On November 18, 2022, the government filed its response to Mr. Martinez's sentencing position paper.

The government contends that the Ninth Circuit's decision in *United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. 2020), forecloses Mr. Martinez's argument that his prior convictions for violating California Health and Safety Code section 11378 are not controlled substance offenses for purposes of the career offender guideline. However, that case involved a separate categorical approach analysis regarding the realistic probability of a defendant facing criminal liability for possession of geometric isomers of methamphetamine. *Id.* at 1153. That case did not address the issue here—whether California's definition of methamphetamine analog is broader than federal law. *Rodriguez-Gamboa* therefore does not control this case.

Furthermore, contrary to what the government claims, the modified categorical approach does not establish that Mr. Martinez's convictions involved methamphetamine rather than analogs thereof.

# II. ARGUMENT

**A.  The analysis in *Rodriguez-Gamboa* is not applicable in this case.**

In *Rodriguez-Gamboa*, the Ninth Circuit first recognized that California Health and Safety Code section 11378 was overbroad and textually criminalized more conduct than federal law. *Id.* at 1152. In that case, the Ninth Circuit noted that California law prohibits the possession for sale of methamphetamine or its optical and geometrical isomers, while the federal Controlled Substances Act ("CSA") only prohibits methamphetamine's optical isomers. *Id.*

However, the Ninth Circuit next found that there was no "realistic possibility" that a person could face criminal liability for the possession of geometric isomers of

2

methamphetamine. *Id.* at 1153. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) (to find a state statute overbroad under the categorical approach, there must be a realistic probability that the state would apply the statute to conduct outside the generic federal definition). The Ninth Circuit reached this determination based on an underlying evidentiary hearing in the district court concluding that "geometric isomers of methamphetamine are impossible." *Id.* The Ninth Circuit found that "[b]ecause geometric isomers of methamphetamine are impossible, there exists 'no realistic probability' that [the] California methamphetamine statute of conviction will be used to prosecute someone in connection with geometric isomers of methamphetamine." *Id.* at 1154 (internal quotations omitted).

The defense in *Rodriguez-Gamboa* further argued that the "categorical approach was designed . . . to avoid fact-specific inquiries about how a given defendant committed a state crime." *Id.* The Ninth Circuit rejected this argument, stating that the evidentiary hearing in the matter was to address "whether it was physically possible for *anyone* to possess a geometric isomer of methamphetamine." The Ninth Circuit noted that the inquiry was "purely scientific" and not a "fact-specific evidentiary hearings about the defendant's state conviction." *Id.* In a footnote to this point, the Ninth Circuit stated:

> Nor are we concerned that our holding today will result in "never-ending evidentiary hearings on organic chemistry clogging our District Courts. Because we hold, as a matter of law, that California's definition of methamphetamine is a categorical match to the definition under the federal CSA, district courts confronting the issue in the future need not repeat what occurred in this case.

*Id.* at n.5.

This footnote must be read in context. In this footnote, the Ninth Circuit was attempting to avoid the need for district courts to hold evidentiary hearings on the existence of geometric isomers of methamphetamine. The Ninth Circuit thus stated that "as a matter of law," California's definition of methamphetamine was a categorical match to the federal definition.

3

This statement, however, is limited to the finding that California's definition of methamphetamine is a categorical match to the federal definition because geometric isomers of methamphetamine do not exist. *See also United States v. Ceja*, 23 F.4th 1218, 1227 (9th Cir. 2022) (This court in *Rodriguez-Gamboa* held, as a matter of law, that California's definition of methamphetamine is a categorical match to the definition under federal law *based on the scientific fact that geometrical isomers of methamphetamine do not exist*.) (emphasis added). Through this footnote, the Ninth Circuit *did not* foreclose any future argument that California's definition of methamphetamine may otherwise be overbroad. The Ninth Circuit in fact noted that the "ultimate legal issue" in the case was "whether the factual impossibility of a state statute being applied more broadly than a federal comparator means there is a categorical match between the two . . ." *Id.* at 1152.

The Court should reject the government's claim that once it issues an opinion applying the categorical approach to a statute and finding that it isn't overbroad for one particular reason, that precludes a later inquiry into whether the statute is categorically overbroad for a different reason. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("Prior precedent that does not squarely address a particular issue does not bind later panels on the question."). Two government-cited cases prove the point. In *United States v. Vega-Ortiz*, the Court considered an argument that § 11378 was categorically overbroad because California law reached more kinds of methamphetamine due to a federal exception for "L-meth." 822 F.3d 1031, 1034-36 (9th Cir. 2016). Thereafter, in *United States v. Rodriguez Gamboa*, the Court considered a different defendant's argument that § 11378 was categorically overbroad because California law reached more kinds of methamphetamine due to differences in how state and federal law define drug isomers. 972 F.3d 1148, 1150-55 (9th Cir. 2020). If the government were right, the Court would have refused in *Rodriguez-Gamboa* to consider the merits of the issue presented.

In this case, Mr. Martinez's argument is not based on the existence of geometric isomers. Rather, Mr. Martinez objects to his designation as a career offender because California defines methamphetamine "analog" more broadly than federal law. As discussed in Mr. Martinez's position paper, California law, unlike federal law, does not require that a controlled substance analog be intended for human consumption. *See* Cal. Health & Safety Code § 11401(b); 21 U.S.C. § 813(a). California likewise law only criminalizes methamphetamine analogs that are *either* similar in pharmacological effect *or* similar in chemical structure, while federal law requires both. *See* Cal. Health & Safety Code § 11401(b); 21 U.S.C. § 802(32)(A).

Mr. Martinez's prior convictions do not categorically constitute controlled substance offenses because California's definition of methamphetamine analog is broader than the federal definition. The holding in *Rodriguez-Gamboa* does not affect this determination.

**B.     Federal law requires that a controlled-substance analog be intended for human consumption, but California law does not.**

The applicable statutes' plain language establishes that federal law includes a requirement absent in the California code—that a drug analog be intended for human consumption. Compare Cal. Health & Safety Code § 11401(a) (2004 & 2014), with 21 U.S.C. § 813(a). The government responds by citing *People v. Silver*, a California Court of Appeal opinion that asserted in passing that "the federal controlled substance analog statute employs the same terms to define a controlled substance analog as" the state analog statue. 230 Cal.App.3d 389, 394-95 (1991). That court never acknowledged the textual differences at issue here, let alone tried to explain how federal and state law could be "the same" despite these differences. *Id.* at 393-94 & nn.2-3. *Silver* cannot change the statutes' plain text, which speaks for itself.

The government also points to California Health & Safety Code § 11401(c), which provides that, regardless of how "controlled substance analog" is defined in subsections (a) and (b), that term does not apply in three particular situations. Paragraph (1) covers

5

substances for which there is an approved "new drug" application pursuant to 21 U.S.C. § 355. Cal. Health & Safety Code § 11401(c)(1). Paragraph (2) applies to persons covered by an exemption for "investigational use" of such a new drug under § 355. Cal. Health & Safety Code § 11401(c)(2). The government relies on paragraph (3), which provides: "Any substance, before an exemption as specified in paragraph (2) takes effect with respect to the substance, to the extent the substance is not intended for human consumption." Cal. Health & Safety Code § 11401(c)(3). Thus, the not-intended-for-human-consumption provision in this paragraph is conditioned on the investigational-use-of-a-new-drug exemption in paragraph (2), clearly meant to excuse the possession of a "new drug" in anticipation of "investigational use by experts qualified by scientific training and experience to investigate the safety and effectiveness of drugs." 21 U.S.C. § 355(i)(1). Because § 11401(c) is rooted in § 355, no other interpretation is even plausible.

The government is also on the wrong track when it cites state cases recognizing that "unlawful possession of a controlled substance" requires "dominion and control of the substance in a quantity usable for consumption or sale[.]" *People v. Martin*, 25 Cal.4th 1180, 1184 (2001); *see also People v. Polk*, 36 Cal.App.5th 340, 349 (2019) (referring to "usable quantity of a controlled substance"). Whether the *quantity* of something already established to be a controlled substance is a usable amount in a particular case has nothing to with whether that thing is a controlled substance under California law in the first place, let alone whether it's an *analog* of a controlled substance. Again, the plain language of § 11401 controls on that issue.

**C.** **Federal law requires that a controlled-substance analog be substantially similar to a controlled substance both in structure and in effect, but California law requires only one or the other.**

The applicable statutes' plain language also establishes that California law requires that a drug analog be substantially similar to a controlled substance *either* in structure *or* in effect, but federal law requires *both*. *Compare* Cal. Health & Safety Code § 11401(b) (2004 & 2014), *with* 21 U.S.C. § 802(32)(A). The government

6

responds that "[a]t least one Circuit has actually held that the federal definition is also disjunctive," citing *United States v. Granberry*, 916 F.2d 1008 (5th Cir. 1990). There, however, the Fifth Circuit briefly and somewhat ambiguously paraphrased § 802(32)(A)'s requirements while quoting it in full in a footnote. *Id*. at 1010 & n.4. At best, that 32-year-old case "recited the test in the disjunctive without discussion or elaboration." *United States v. Turcotte*, 405 F.3d 515, 522 (7th Cir. 2005). By 2015, however, the matter was settled enough that the government *conceded* before the Supreme Court the argument Mr. Martinez makes here. *See McFadden v. United States*, 576 U.S. 186, 194 n.2 (2015); *see also United States v. Makkar*, 810 F.3d 1139, 1146 (10th Cir. 2015). The government cannot create ambiguity in the federal statute simply by ignoring this authority.

**D. The modified categorical approach does not establish that Mr. Martinez's convictions involved methamphetamine rather than analogs thereof.**

According to the presentence report, court records for each § 11378 conviction reflect that Mr. Martinez pleaded guilty to a complaint charging him with possessing methamphetamine for sale. From that alone, the government contends that the modified categorical approach establishes that neither crime involved an analog of methamphetamine.

While § 11378 is divisible as to each of the controlled substances to which it cross-references, it is not divisible as to any one controlled substance and its analogs. On the contrary, a "controlled substance analog shall . . . be *treated the same* as the controlled substance . . . of which it is an analog." Cal. Health & Safety Code § 11401(a) (emphasis added); *see, e.g.*, *People v. Becker*, 183 Cal.App.4th 1151, 1155-56 (2010) (possession conviction upheld because drug was either controlled substance itself or analog of controlled substance). Thus, the mere fact that Mr. Martinez pleaded guilty to complaints charging methamphetamine does not mean that his convictions weren't based on analogs of that controlled substance.

7

**E.     The Court may, in its discretion, refuse to apply the career offender guideline.**

Even if the Court finds that Mr. Martinez's prior convictions are controlled substance offenses, the career offender guideline is not mandatory. Mr. Martinez incorporates the arguments made in his sentencing position paper and urges the court to refuse to apply this flawed guideline. The Court further has the discretion under 18 U.S.C. § 3553(a) to grant a downward variance from the Guidelines range based on Mr. Martinez's significant rehabilitation efforts.

## III. CONCLUSION

Mr. Martinez respectfully requests that the Court sentence him to the five year mandatory minimum term of imprisonment.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 7, 2022           By  */s/ Luisa Tamez*
                                      LUISA TAMEZ
                                      Deputy Federal Public Defender

# PROOF OF SERVICE

I, Genevieve Garza-Goldsholl, declare that I am a resident or employed in Riverside County, California; that my business address is the Office of the Federal Public Defender, 3801 University Avenue, Suite 700, Riverside, California 92501, (951) 276-6346; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **REPLY IN SUPPORT OF SAMUEL MARTINEZ, III'S POSITION REGARDING SENTENCING** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[X] Faxing same via facsimile machine addressed as follows:

**ABIMBOLA FOWLER**
U.S. Probation Officer
Abimbola_fowler@cacp.uscourts.gov

This proof of service is executed at Riverside, California, on **December 7, 2022.**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Genevieve Garza-Goldsholl
**GENEVIEVE GARZA-GOLDSHOLL**